1  RANDY RENICK (CA Bar No. 179652)
   (Email: rrr@hadsellstormer.com)
2  CORNELIA DAI (CA Bar No. 207435)
   (Email: cdai@hadsellstormer.com)
3  **HADSELL STORMER RENICK & DAI LLP**
   128 North Fair Oaks Avenue, Suite 204
4  Pasadena, California 91103-3645
   Telephone: (626) 585-9600
5  Fax: (626) 577-7079

6  Attorneys for Plaintiffs
   DIEGO GUZMAN and KEVIN WHITLATCH
7
   [*Additional Counsel on next page*]
8

9
                    **UNITED STATES DISTRICT COURT**
10
                   **NORTHERN DISTRICT OF CALIFORNIA**
11

12  DIEGO GUZMAN and KEVIN WHITLATCH,         Case No. 3:22-CV-04962-RFL
    individually and on behalf of all similarly situated
    current and former employees,            **NOTICE OF MOTION AND MOTION FOR**
13                                            **FINAL APPROVAL OF SETTLEMENT;**
                    Plaintiffs,               **MEMORANDUM OF POINTS IN SUPPORT**
14                                            **THEREOF**
              v.
15                                            [*Declarations and [Proposed] Order concurrently
    DOW AGROSCIENCES LLC, CORTEVA             filed herewith*]
16  AGRISCIENCE LLC, and DOES 1 through 10,
    inclusive,                                DATE:  July 30, 2024
17                                            TIME:  1:30 p.m. (via Zoom or in person)
                    Defendants.               Ctrm:    United States District Court
18                                                     San Francisco Courthouse
                                                       Courtroom 15, 18th Floor
19                                                     450 Golden Gate Ave.
                                                       San Francisco, CA 94102
20
                                              Judge:  Hon. Rita F. Lin
21
                                              Complaint Filed: August 30, 2022
22                                            First Amended
                                              Complaint:      November 7, 2022
23                                            Trial Date:     Not Set
24

25

26

27

28

---

**NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF SETTLEMENT;**
**MEMORANDUM OF POINTS IN SUPPORT THEREOF/Case No. 3:22-CV-04962-RFL**

JAY SMITH (CA Bar No. 166105)
(Email: js@gslaw.org)
JOSHUA F. YOUNG (CA Bar No. 232995)
(Email: jyoung@gslaw.org)
**GILBERT & SACKMAN**
**A LAW CORPORATION**
800 Wilshire Boulevard, Suite 1410
Los Angeles, California 90017
Telephone: (323) 938-3000
Fax: (323) 937-9139

Attorneys for Plaintiffs
DIEGO GUZMAN and KEVIN WHITLATCH

## TABLE OF CONTENTS

**PAGE(S)**

I.    INTRODUCTION ...................................................................................1

II.   FACTUAL AND PROCEDURAL BACKGROUND........................................2

    A.    Factual Background ........................................................................2

    B.    The Parties ...................................................................................4

    C.    Procedural Background....................................................................4

    D.    Discovery and Mediation ................................................................5

    E.    Settlement Agreement and Preliminary Approval ..................................5

III.   ARGUMENT ......................................................................................6

    A.    The Court-Approved Notice Plan Was Fully Implemented and Satisfies Rule 23 Requirements. ..............................................................................6

    B.    The Settlement is Fair, Adequate, and Reasonable and Should be Granted Final Approval. ...................................................................................8

    C.    The Strength of Plaintiffs' Case and the Risk, Expense, Complexity, and Likely Duration of Further Litigation .................................................9

    D.    The Proposed Settlement is a Reasonable Compromise of Claims. .....................10

        1.    The Extent of Discovery and Stage of the Proceedings............................12

        2.    Experience and Views of Counsel .........................................................12

        3.    The Presence of Governmental Entities...................................................13

        4.    The Reaction of the Class Members .......................................................13

    E.    The Plan of Allocation Is Fair, Adequate, and Reasonable and Should be Approved........................................................................14

    F.    The Requested Service Payment for the Two Named Plaintiffs Should Be Approved........................................................................16

    G.    Final Certification of the Class for Settlement Purposes Is Proper. ......................19

i

**NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF SETTLEMENT; MEMORANDUM OF POINTS IN SUPPORT THEREOF/Case No. 3:22-CV-04962-RFL**

**TABLE OF CONTENTS**
**(Continued)**

PAGE(S)

    1.     The Settlement Class Satisfies the Rule 23(a) Requirements ...................19

    2.     The Settlement Class Meets the Requirements of Rule 23(b) .................20

IV.    CONCLUSION...........................................................................................22

1

## TABLE OF AUTHORITIES

2
**PAGE(S)**

3      CASES

4      *Berlanga v. Equilon Enterprises LLC*,
        U.S.D.C., Northern District, Case No. 4:17-cv-00282 (final approval of $7,750,000
5       settlement granted January 22, 2019) ...................................................................12

6      *In re Bluetooth Headset Prods. Liab. Litig.*,
        654 F.3d 935 (9th Cir. 2011) ................................................................................14
7

8      *Boyd v. Bank of Am. Corp.*,
        No. SACV 13–561 DOC, 2014 WL 6473804 (C.D. Cal. Nov. 18, 2014)..........................18

9      *Boyd v. Bechtel Corp.*,
10      485 F. Supp. 610 (N.D. Cal. 1979) .........................................................................13

11     *Bradley v. Networkers Int'l, LLC*,
        211 Cal. App. 4th 1129 (2012) ..............................................................................21
12

13     *Buzas v. Phillips 66 Company*,
        U.S.D.C., Northern District, Case No. 4:17-cv-00163 (final approval of $5,500,000
14      settlement granted March 8, 2018) ..........................................................................12

15     *In re Citric Acid Antitrust Litig.*,
        145 F. Supp. 2d 1152 (N.D. Cal. 2001) ...................................................................14
16

17     *Clack v. Chevron Corporation*,
        Los Angeles Superior Court, Case No. BC649514 (final approval of $17,375,000
18      granted on August 6, 2020).....................................................................................12

19     *In re Conn. Gen. Life Ins. Co.*,
        1997 WL 910387 (C.D. Cal. Feb.13, 1997)...............................................................18
20

21     *Cook v. Niedert*,
        142 F.3d 1004 (7th Cir. 1998) ................................................................................18

22     *Craft v. City of San Bernardino*,
        624 F. Supp. 2d 1113 (C.D. Cal. 2008) ....................................................................14
23

24     *Craig v. Corteva, Inc.*,
        Case No. 3:19-cv-07923-JCS..................................................................................5

25     *Craig v. Corteva*,
26      U.S.D.C., Northern District, Case No. 3:19-cv-07923 (final approval of $3,800,000
        settlement granted January 31, 2022) .......................................................................11
27

28     *Dyer v. Wells Fargo Bank, N.A.*,
        303 F.R.D. 326 (N.D. Cal. 2014)............................................................................14

i

*Edwards v. The First Am. Corp.*,
　798 F.3d 1172 (9th Cir. 2015) ...................................................................................21

*Ellis v. Costco Wholesale Corp.*,
　657 F.3d 970 (9th Cir. 2011) ....................................................................................19

*Ellis v. Naval Air Rework Facility*,
　87 F.R.D. 15 (N.D. Cal. 1980).....................................................................................9

*Garner v. State Farm Mut. Auto. Ins. Co.*,
　No. CV 08 1365 CW EMC, 2010 WL 1687832 (N.D. Cal. Apr. 22, 2010).....................18

*Glass v. UBS Financial Services, Inc.*,
　No. C-06-4068 MMC, 2007 WL 221862 (N.D. Cal. Jan. 26, 2007) .............................18

*Hanlon v. Chrysler Corp.*,
　150 F.3d 1011 (9th Cir. 1998) ...................................................................................21

*Hanon v. Dataproducts Corp.*,
　976 F.2d 497 (9th Cir. 1992) .....................................................................................20

*Harris v. Vector Mktg. Corp.*,
　No. C-08-5198 EMC, 2011 U.S. Dist. LEXIS 48878 (N.D. Cal. Apr. 29, 2011) ........15, 17

*Herrera v. Zumiez, Inc.*,
　953 F.3d 1063 (2020)................................................................................................11

*In re High-Tech Emple. Antitrust Litig.*,
　No. 11-CV-02509-LHK, 2015 U.S. Dist. LEXIS 118051 (N.D. Cal. Sep. 2, 2015)..........8, 16

*In re Hyundai & Kia Fuel Econ. Litig.*,
　Nos. 15-56014, 15-56025, 15-56059, 15-56061, 15-56064, 15-56067, 2018 U.S. App.
　LEXIS 1626 (9th Cir. Jan. 23, 2018)...........................................................................19

*La Fleur v. Med. Mgmt. Int'l, Inc.*,
　No. EDCV 13-00398-VAP, 2014 WL 2967475 (C.D. Cal. June 25, 2014).....................18

*Lane v. Facebook, Inc.*,
　696 F.3d 811 (9th Cir. 2012) ......................................................................................7

*Linney v. Cellular Alaska Partnership*,
　151 F.3d 1234 (9th Cir. 1998) ..............................................................................11, 12

*Marshall v. Holiday Magic, Inc.*,
　550 F.2d 1173 (9th Cir. 1977) ....................................................................................6

*In re Mego Fin. Corp. Sec. Litig.*,
　213 F.3d 454 (9th Cir. 2000) ............................................................................9, 11, 20

ii

*Mercury Interactive Corp. Sec. Litig. v. Mercury Interactive Corp.*,
    618 F.3d 988 (9th Cir. 2010) ..........................................................................................8

*Officers for Justice v. Civil Svc. Comm'n*,
    688 F.2d 615 (9th Cir. 1982) .......................................................................................8, 11

*In re Oracle Sec. Litig.*,
    No. C-90-0931-VRW, 1994 U.S. Dist. LEXIS 21593 (N.D. Cal. June 18, 1994) ............16

*Resnick v. Frank*,
    779 F.3d 934 (9th Cir. 2015) ........................................................................................17

*Rodriguez v. West Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009) ......................................................................................7, 18

*Sandoval v. Roadlink United States Pac., Inc.*,
    No. EDCV 10-00973 ...................................................................................................20

*Satchell v. Fed. Express Corp.*,
    No. 03-cv-2878-SI, 2007 WL 1114010 (N.D. Cal. Apr. 13, 2007) ................................9

*Slaven v. BP America, Inc.*,
    190 F.R.D. 649 (C.D. Cal. 2000) .................................................................................19

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003) ........................................................................................18

*Thomas v. Magnachip Semiconductor Inc.*,
    No. 14-CV-01160-JST, 2016 WL 1394278 (N.D. Cal. Apr. 7, 2016) .............................8

*Torrisi v. Tucson Elec. Power Co.*,
    8 F.3d 1370 (9th Cir. 1993) .........................................................................................8, 9

*Viceral v. Mistras Group, Inc.*
    No. 15-cv-02198-EMC, 2017 WL 661352 (N.D. Cal. Feb. 17, 2017) .......................11, 15

*Vizcaino v. Microsoft Corp.*,
    290 F.3d 1043 (9th Cir. 2002) ......................................................................................14

*Ward v. Tilly's, Inc.*,
    31 Cal.App.5th 1167 (2019) ......................................................................................11, 21

**Statutes**

Cal. Bus. & Prof. Code § 17200 *et seq.* .................................................................................4

Cal. Code Regs. § 11010, subd. 5 .........................................................................................21

Cal. Lab. Code §§ 200-203 ....................................................................................................4

iii

**NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF SETTLEMENT;**
**MEMORANDUM OF POINTS IN SUPPORT THEREOF/Case No. 3:22-CV-04962-RFL**

Cal. Lab. Code § 218 .......................................................................................................4

Cal. Lab. Code § 226 .......................................................................................................4

Cal. Lab. Code § 226.3 ....................................................................................................4

Cal. Lab. Code § 2698 *et seq.* ................................................................................ *passim*

Cal. Lab. Code § 2699(l)(2) ...........................................................................................13

**Other Authorities**

8 C.C.R. § 11010...............................................................................................................4

**NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF SETTLEMENT; MEMORANDUM OF POINTS IN SUPPORT THEREOF/Case No. 3:22-CV-04962-RFL**

PLEASE TAKE NOTICE that on July 30, 2024, at 1:30 p.m. or as soon thereafter as the matter may be heard, in Courtroom F, 15th Floor, of the above-entitled court located at 450 Golden Gate Avenue, San Francisco, California 94102, Plaintiffs Diego Guzman and Kevin Whitlatch, individually and on behalf of all members of the conditionally certified class (collectively "Plaintiffs"), will move and hereby do move, pursuant to Rule 23 of the Federal Rules of Civil Procedure, for entry of the order concurrently filed herewith granting final approval of the class action settlement and the plan of allocation and entry of judgment.

The motion will be based on the Federal Rules of Civil Procedure, the foregoing notice, memorandum of points and authorities, and declarations and exhibits filed concurrently herewith, and the pleadings, records, and files in this action.

DATED:  July 16, 2024                    Respectfully submitted,

                                         HADSELL STORMER RENICK & DAI LLP

                                         GILBERT & SACKMAN, A LAW CORPORATION


                                         _/s/ Randy Renick_
                                         Randy Renick
                                         Attorneys for Plaintiffs and Conditionally Certified Class

**NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF SETTLEMENT;**
**MEMORANDUM OF POINTS IN SUPPORT THEREOF/Case No. 3:22-CV-04962-RFL**

1      <u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2      **I.    INTRODUCTION**

3            Diego Guzman and Kevin Whitlatch ("Named Plaintiffs") seek final approval of the proposed

4      class action settlement ("Settlement") with Defendants Dow Agrosciences LLC and Corteva

5      Agrisience LLC ("Defendants" or "Dow") of wage and hour claims brought on behalf of all current

6      and former hourly employees of Defendants who were assigned Primary Relief shifts at the chemical

7      manufacturing plant in Pittsburg, California.

8            On March 26, 2024, the Court granted Preliminary Approval of the Settlement Agreement (Dkt.

9      # 46), ("Settlement Agreement" or "Settlement" at Ex. 1 to the Declaration of Randy Renick, Ex. 1).

10     The Settlement provides that Defendants will pay $3,800,000 for the benefit of the Class, which is

11     defined as:

12           All current and former hourly employees of Defendants who worked at the Pittsburg,
       California plant, and who have been assigned primary relief shifts that required them to
13           be ready to report to the refinery if contacted, since August 30, 2018.

14     *Id.* at 2. The class closed on the date of preliminary approval, March 26, 2024.

15           The Settlement provides for cash payment to 194 Class Members according to the number of

16     weeks worked during the Class Period while assigned a 12-hour rotating shift at the Pittsburg, California

17     manufacturing plant ("Workweeks"), Settlement Agreement at ¶ 23, Declaration of Madely Nava

18     ("Nava Decl.), ¶ 6.a.-6.d.; service awards not to exceed $15,000 for each of the two Named Plaintiffs

19     (Settlement at ¶ 27); $40,000 in penalties under the Private Attorneys General Act ("PAGA"), with 75%

20     of the PAGA penalties ($30,000) being paid to the California Labor and Workforce Development

21     Agency ("LWDA") and 25% of the PAGA penalties ($10,000) being paid to the Class Members (*id.* at ¶

22     38); $10,000 for claims administration to APEX Class Action ("APEX" or "Claims Administrator"); and

23     reasonable attorneys' fees and costs, *id.* at 20, which Plaintiffs seek in the amount of $950,000 (25% of

24     the fund). *See* Renick Decl., ¶ 2, Nava Decl., ¶ 18.[1]

25           The Court should grant final approval of the Settlement as it is fair, reasonable, and adequate.

26

27     _____
       [1] The Claims Administration was completed under-budget at $8,990, and Plaintiffs request only
28     $24,661 of the $30,000 in costs contemplated in the Settlement Agreement. Accordingly the amount for
       distribution will increase slightly.

The Settlement provides for payment of $3,800,000 on an all-cash, non-reversionary basis, and is the result of arms-length negotiations following an extensive investigation of liability and damages conducted by Plaintiffs. The net settlement to be distributed to the Class after the reduction of the LWDA payment for PAGA penalties, attorneys' fees, costs, incentive awards, and administration costs is $2,750,000. Nava Decl. ¶ 16. The average payment to each of the 194 Class Members is $14,129. *Id.* Thus, the financial benefit conferred upon the Class is significant, and the recovery here is fair, reasonable, and adequate in light of the substantial benefit conferred on the class members and the risk, expenses, and uncertainty of continued litigation.

In addition, the reaction of the Class Members has been very positive and favors approval of the Settlement. No Class Member has objected or opted out. Nava Decl. ¶¶ 10-12. The Claims Administrator properly implemented the Notice Plan, and only one (1) Notice remains undeliverable. *Id.* ¶¶ 5-8. Efforts to locate that Class Member will continue for at least another 180 days after the checks are issued. Renick Decl., Ex. 1, at ¶ 79.  There were two disputes regarding the number of Workweeks awarded and both were resolved in favor of the Class Members. Renick Decl. ¶ 3; Nava Decl. ¶¶ 12.

The Court should also approve the plan of allocation, whereby the court-approved attorneys' fees and costs, court-approved service awards, administration costs, and payment to the California Labor & Workforce Development Agency ("LWDA") under the Private Attorneys General Act ("PAGA") are deducted from the Settlement, and a formula based on workweeks is used for distribution to the Class Members of the resulting net settlement amount. Renick Decl. ¶ 32.

In addition, the requested incentive awards in the amount of $15,000 each for the two Named Plaintiffs is consistent with a fair, just, and adequate settlement.

Final approval of certification for purposes of settlement under Fed. R. Civ. P. 23 is also proper.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

### A.     Factual Background

Defendants Dow AgroSciences, LLC and Corteva Agriscience LLC own and/or operate the Pittsburg plant, located in Contra Costa County, California, which manufactures products for agricultural operations and pest control services. Renick Decl. ¶ 4. The plant operates continuously, 24 hours per day, seven days per week. The plant processes hazardous and flammable chemicals that must

2

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF SETTLEMENT;
MEMORANDUM OF POINTS IN SUPPORT THEREOF/Case No. 3:22-CV-04962-RFL

be constantly monitored in order to ensure safety of those on-site and in the nearby communities. The chemicals must be maintained in a stable state to prevent toxic spills and fires, which requires, among other things, constant monitoring and adjusting of temperatures and pressures, prevention of reactive chemical issues, and monitoring and prevention of chemical leaks. Renick Decl. ¶ 5.

Certain employees, principally Operators, who are scheduled to work 12-hour shifts ("12-hour shift employees"), are required to operate and/or monitor the production process at all times. 12-hour shift employees are required to monitor their units, respond to upsets and critical events, and maintain the safe and stable operation of the units. There are eight units or blocks, seven of which operate by sending and receiving materials to other units, processing materials, and shipping out product. The remaining block provides security and emergency services. Approximately four to eight Operators work a given day or night 12-hour shift depending on the size of the block. An Operator must be qualified and certified for his or her position in a block. Renick Decl. ¶ 6.

Because the chemical production process requires constant monitoring and the plant prohibits Operators from working shifts longer than twelve hours, Defendants regularly schedule Plaintiffs to be on-call for Primary Relief shifts in case a safety incident occurs, a regularly scheduled Operator is unavailable, or an unexpected event reduces the current production rate. In a typical week, an Operator is assigned to work three (3) 12-hour shifts and two (2) Primary Relief Shifts and is off the remaining two (2) days. For each Primary Relief shift, the employee is on-call for the first two hours of the Day Shift from 4:00 A.M. until 6:00 A.M. and again for the first two hours of the Night Shift from 4:00 P.M. until 6 P.M. During these two-hour periods, the employee must be "available." According to Defendants' policies, "'Being available' means that the Primary Relief person can be contacted by telephone" and able to arrive at the plant within a certain time period. Once the plant contacts the designated Primary Relief Operator, that employee is expected to appear at the plant as quickly as possible. If the employee fails to appear, they are subject to discipline. Renick Decl. ¶ 7.

If an Operator on a Primary Relief shift is called into the plant, they work a 12-hour shift and are compensated at their usual rate. If they are assigned Primary Relief and not called in, they must remain available but do not receive any compensation. Plaintiffs contend that they are subject to Defendants' control during Primary Relief shifts, that the shifts impose significant burdens on

Plaintiffs' ability to travel freely and control their activities while they are on-call, and as a result, they are entitled to compensation when assigned to a Primary Relief shift. Defendants contend that Plaintiffs are not entitled to wages for their Primary Relief shifts unless they are required to report to the plant. Renick Decl. ¶ 8.

### B.    The Parties

<u>Defendants</u>. Defendants Dow AgroSciences LLC and Corteva Agriscience LLC have owned and/or operated the Pittsburg plant, located in Contra Costa County, California, since before the beginning of the class period, August 30, 2018. The plant manufactures products for agricultural operations and pest control services and operates under the brand Corteva. Renick Decl. ¶ 9.

<u>Plaintiffs/Class Representatives</u>. Plaintiff Diego Guzman worked as a Plant Operator at the Pittsburg plant from January 2016 until April 2023 and was assigned to the 660 Block. Plaintiff Kevin Whitlatch worked as a Plant Operator at the Pittsburg plant from 2014 to 2019 and was assigned to the 310 Block during his employment. Renick Decl. ¶ 10.

### C.    Procedural Background

On August 30, 2022, Plaintiffs filed this action in the Northern District of the United States District Court of California. Dkt. 1. The complaint asserted, among other things, that Defendants require Plaintiffs and the putative class members to be subject to a Primary Relief policy which requires Plaintiffs to remain available to Defendants and be able to arrive at the plant to work within a short timeframe if called to work. The Plaintiffs filed a First Amended Complaint on November 7, 2022. Dkt. 21. Renick Decl. ¶ 11.

The First Amended Complaint alleged the following legal claims: (1) Failure to Pay Reporting Time Pay (IWC Wage Order 1-2001; 8 C.C.R. § 11010; Cal. Lab. Code § 218); (2) Failure to Pay All Wages Earned at Termination (Lab. Code §§ 200-203); (3) Failure to Furnish Accurate Itemized Wage Statements (Lab. Code §§ 226 and 226.3); (4) Violations of the California Unfair Competition Law ("UCL") (Bus. & Prof. Code § 17200 *et seq.*); and (5) Liability for Civil Penalties Under the Private Attorneys General Act ("PAGA") (Lab. Code § 2698 *et seq.*). Plaintiffs sought unpaid wages, statutory and civil penalties, restitution, attorneys' fees and costs, interest, and injunctive and declaratory relief for the time period from August 30, 2018, to the present. Renick Decl. ¶ 12.

4

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF SETTLEMENT;
MEMORANDUM OF POINTS IN SUPPORT THEREOF/Case No. 3:22-CV-04962-RFL

Defendants filed their Answer to the First Amended Complaint on December 9, 2022. Dkt. 27. Renick Decl. ¶ 13.

### D.    Discovery and Mediation

On December 15, 2022, the parties filed their Joint Rule 26(f) Report and Case Management Conference Statement, identifying, among other things, their disagreement over whether a *Belaire-West* notice should be issued before the production of class member names and contact information. Defendants, however, agreed to produce policies related to standby time, work schedules, payroll and timecard records for the entire class as well as timekeeping and payroll records and schedules within a reasonable time period after identifying the employees who meet the class definition. Renick Decl. ¶ 14.

Shortly thereafter, the Parties agreed to participate in mediation and Defendants agreed to produce all of the documents necessary to allow Plaintiffs to fully evaluate liability and damages prior to the mediation. On June 28, 2023, July 11, 2023, July 12, 2023, and July 13, 2023, Defendants produced payroll records, timecards, policies and procedures, and schedules. Renick Decl. ¶ 15.

In addition to the materials produced by Defendants, Plaintiffs were very familiar with the wage and hour practices at the Defendants' Pittsburg facilities based on their own investigation. Plaintiffs had conducted a thorough investigation of Defendants' Primary Relief practices, including interviews with class members on relevant topics such as job assignments, work duties and responsibilities, policies and practices regarding the Primary Relief shifts, and analysis of documents provided by class members. Moreover, Plaintiffs' counsel had litigated a wage and hour case over Defendants' meal and rest break practices at the Pittsburg facility on behalf of 12-hour shift employees in *Craig v. Corteva, Inc.*, Case No. 3:19-cv-07923-JCS. That matter was filed in 2019, litigated, and resolved in 2022. Renick Decl. ¶ 16.

On July 27, 2023, the Parties mediated with Steve Serratore, a well-respected mediator located in Los Angeles with expertise in wage and hour law. After a full day of negotiations, the Parties were able to reach a settlement. Renick Decl. ¶ 17.

### E.    Settlement Agreement and Preliminary Approval

The Court held a hearing on Plaintiffs' Motion for Preliminary Approval on March 26, 2024.

5

The Motion was granted. Dkt. 46.

On May 10, 2024, Notice was mailed to 186 Class Members. On June 4, 2024, Plaintiffs filed and posted on the Class Action website, www.guzmanclassactionsettlement.com, their Motion for Attorneys' Fees and Reimbursement of Costs. Dkt. 71; Nava Decl. ¶ 6.b-c.

After the initial mailing, the parties identified eight additional class members. Notice was provided to each of those individuals by email and/or US Mail on or before June 18, 2024. Plaintiffs' counsel spoke by phone with five of those Class Member for which phone contact information was available and each of those confirmed that they: 1) understood the Notice; 2) had no dispute as to the number of assigned workweeks; 3) wished to remain a member of the class; and 4) did not wish to object to the terms of the Settlement Agreement. Renick Decl at ¶ 18.

## III. ARGUMENT

### A. The Court-Approved Notice Plan Was Fully Implemented and Satisfies Rule 23 Requirements.

Rule 23 requires for class action settlements that a court direct notice in a "reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(2). Rule 23 further requires that the notice be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort," and that the notice state the nature of the action, the class definition, the class claims, issues, or defenses, the right to individual legal representation, the right to request exclusion, and the binding effect of a judgment under Rule 23(c)(3). Fed R. Civ. P. 23(c)(2). The notice "must present a fair recital of the subject matter and proposed terms and give[] an opportunity to be heard to all class members." *Marshall v. Holiday Magic, Inc.*, 550 F.2d 1173, 1177 (9th Cir. 1977).

On March 26, 2024, the Court entered an order preliminarily approving the Settlement Agreement. Pursuant to and in compliance with the Preliminary Approval Order, on May 10, 2024, the Claims Administrator mailed the Class Notice to 186 Class Members. Nava Decl. ¶¶ 6.a.-6.d. The Notice included detailed information regarding the following: the nature of the case; the definition of the class; the terms of the Settlement; a class member's rights with respect to participation in the Settlement and the consequences of exercising those rights; the total settlement amount, including the portions of

the total settlement amount allocated to PAGA penalties, for payment of service awards, attorneys' fees and costs, and administrative costs; how to object to the Settlement; how to opt out of the Settlement; how to challenge the information upon which their payment will be calculated; the procedures and timing for doing each of these acts; and the date set for the final approval hearing. *See* Ex. 1 to Nava Decl. The Notice also included the contact information for class counsel; the address for a website maintained by the claims administrator with links to the notice, motions for approval and for attorneys' fees; and instructions on how to access the case docket via PACER. *Id.*

Each Class Member's Notice was customized to include the estimated payment amount he or she will receive, the formula used to calculate the estimated amount, and the number of Workweeks worked by that Class Member. Nava Decl. ¶ 6.e.; Ex. 1 thereto. Thus, the information provided in the Notice exceeds that which is required. *Lane v. Facebook, Inc.*, 696 F.3d 811, 826 (9th Cir. 2012) (proper notice "does not require an estimate of the potential value of [the] claims"); *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 962 (9th Cir. 2009) (The notice is sufficient if it "describes the aggregate amount of the settlement fund and the plan for allocation.").

The Claims Administrator fully complied with the Notice Plan approved by the Court, *see* Dkt. 65 at 10-11, 9, Dkt. 70 at 1. The Administrator determined from the data provided by Defendants on April 25, 2024, that there were 186 Settlement Class Members who were sent the Notice on May 10, 2024. Nava Decl., ¶ 6.a.-6.d. APEX created the case website, www.guzmanclassactionsettlement.com, on which it posted the Notice and related court and settlement documents. After the initial mailing, the parties identified eight additional class members. Notice was provided to each of those individuals by email and/or US Mail on or before June 18, 2024. *Id.* at ¶ 6.d.

Of the 194 Notices provided to Class Members, six (6) were returned by the U.S. Postal Service without forwarding addresses. For five of the returns, the Claims Administrator was able to locate new addresses, and the returned Notice was re-mailed to the new address. Nava Decl. ¶ 8. One (1) remains undeliverable. *Id.* A check will be prepared for that share while the Claims Administrator continues its efforts to locate the class member for at least 180 days after checks have been prepared. Renick Decl., Ex. 1, at ¶ 79. Thus, the Notice Plan provided the "best notice that is practicable under the

**NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF SETTLEMENT; MEMORANDUM OF POINTS IN SUPPORT THEREOF/Case No. 3:22-CV-04962-RFL**

circumstances" as notice was provided to each Class Member who could be identified based on Defendants' records and only six (6) Notices required re-mailing.

Further, the 60-day deadline to object or opt out approved by the Court satisfied the notice requirements of Rule 23 and does not infringe on due process rights. *See Thomas v. Magnachip Semiconductor Inc.*, No. 14-CV-01160-JST, 2016 WL 1394278, at *8 (N.D. Cal. Apr. 7, 2016)(finding "any period shorter than 60 days is too short a time to allow class members to properly respond"); *see also Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993) (finding mailing of notice 31 days before the deadline for objections is adequate).

Plaintiffs filed and posted to the case website their Motion for Attorneys' Fees and Reimbursement of Costs on June 4, 2024, 35 days prior to the July 9, Objection Deadline. Nava Decl. ¶ 6.c. The posting of the motion was consistent with the Settlement Agreement and the Court's order, and it satisfies the standard for notice set by the Ninth Circuit in *Mercury Interactive Corp. Sec. Litig. v. Mercury Interactive Corp.*, 618 F.3d 988 (9th Cir. 2010), which requires that a motion for attorneys' fees be made available to class members prior to the deadline for objections.

**B.    The Settlement is Fair, Adequate, and Reasonable and Should be Granted Final Approval.**

It is well established in the Ninth Circuit that "voluntary conciliation and settlement are the preferred means of dispute resolution." *Officers for Justice v. Civil Svc. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982). In evaluating a proposed class action settlement, "[t]he universally applied standard is whether the settlement is fundamentally fair, adequate and reasonable." *Officers for Justice*, 688 F.2d at 625 (citations omitted); *accord Torrisi*, 8 F.3d at 1375. "A district court may consider some or all of the following factors when making this determination: 'the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.'" *In re High-Tech Emple. Antitrust Litig.*, No. 11-CV-02509-LHK, 2015 U.S. Dist. LEXIS 118051, at *8 (N.D. Cal. Sep. 2, 2015) (*citing Officers for Justice*, 688 F.2d at 625).

8

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF SETTLEMENT;
MEMORANDUM OF POINTS IN SUPPORT THEREOF/Case No. 3:22-CV-04962-RFL

The court is entitled to exercise its "sound discretion" when deciding whether to grant final approval. *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980), *aff'd*, 661 F.2d 939 (9th Cir. 1981); *Torrisi*, 8 F.3d at 1375. "In addition, the settlement may not be the product of collusion among the negotiating parties." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000). Settlement negotiations in this case were conducted over many months after extensive investigation and discovery, at arm's length, and with the assistance of a mediator. "The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive." *Satchell v. Fed. Express Corp.*, No. 03-cv-2878-SI, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007). Thus, the proposed class settlement is the result of serious, informed, non-collusive, and good-faith negotiations.

The recovery here is fair, reasonable, and adequate in light of the substantial benefit conferred on the class members and the risk, expenses, and uncertainty of continued litigation.

### C. The Strength of Plaintiffs' Case and the Risk, Expense, Complexity, and Likely Duration of Further Litigation

In evaluating the fairness, reasonableness, and adequacy of the Settlement, the Court should weigh the strength of Plaintiffs' case against the risk and expense of continued litigation. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000). While Plaintiffs believe in the merits of their case, they also recognize the inherent risks and uncertainty of litigation, including that the Class could receive nothing, and understand the benefit of providing significant settlement payments to the Class now. Plaintiffs' claims involve disputed legal issues and fact-specific arguments that the Parties have been litigating since the inception of the action. While Plaintiffs firmly believe in the strength of their claims, Dow's defenses create a possibility the claims might not be certified or may fail on the merits. Renick Decl. ¶ 19.

If the proposed Settlement had not been achieved, continued litigation of the claims would take substantial time and possibly confer no benefit upon the Class. With class claims for violation of wage and hour laws, litigation can extend for many years due to the many hurdles facing plaintiffs in class actions. It was also likely that the action would continue to be fiercely litigated by the Parties; accordingly, many more years of litigation, which inevitably involve significant additional expenses, were a real possibility. By contrast, the Settlement will yield a prompt, certain, and substantial recovery

1  for the Class, without need for additional time or judicial resources. Renick Decl. ¶ 20.

2        Thus, on balance, these factors weigh in favor of the Settlement.

3        **D.    The Proposed Settlement is a Reasonable Compromise of Claims.**

4        Plaintiffs' Counsel believes the proposed Settlement is in the best interest of the Class based on

5  detailed knowledge of the factual and legal issues present in this action. Plaintiffs' Counsel considered,

6  among other issues, the risks of an adverse class certification and/or summary judgment ruling and trial

7  and other normal perils of litigation that affect the value of the claims in reaching the proposed

8  Settlement. Renick Decl. ¶ 21.

9        After serious consideration of all facts and arguments, Plaintiffs and Plaintiffs' Counsel

10 concluded the terms and amount of the proposed Settlement are fair and reasonable. The Settlement

11 provides for the payment of $3,800,000. There are 194 Class Members. The net settlement, after the

12 deduction of fees, costs, service awards, and administration is $2,750,000. The average net payment to

13 each class member will be approximately $14,129. Based on Plaintiffs' review of timecard and payroll

14 data of all shifts during the class period, the total recovery amount at the time of the July 27, 2023,

15 mediation was approximately $8,704,501.10. This includes $5,151,992.59 in wages, $418,600.00 in

16 PAGA penalties, $1,717,882.80 in waiting time and wage statement penalties, and $1,416,025.71 in

17 interest. The settlement amount of $3,800,000 is, therefore, approximately 44% of the total amount that

18 Plaintiffs could have recovered on the reporting time, waiting time, wage statement, PAGA, and UCL

19 claims. Renick Decl. ¶ 22.

20       During the course of the litigation, Defendants announced they would be shutting down the

21 Pittsburg facility in 2024 and that most – if not all – of the employees would be terminated. Renick

22 Decl. ¶ 23. Plaintiffs considered that as a result, Class Members would disperse, and witnesses would

23 be more difficult to locate. This would likely mean that litigation of the matter would be drawn out and

24 recovery and collection of any judgement or award would be complicated. These factors were also

25 considered in the settlement of the matter. Renick Decl. ¶ 23.

26       The primary claim is for the non-compliant unpaid standby shifts and compensation of four

27 hours pay for each non-compliant standby shift. Defendants' policies and practices failed to

28 compensate Operators for all hours in which they reported to work, including each two-hour standby

10

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF SETTLEMENT;
MEMORANDUM OF POINTS IN SUPPORT THEREOF/Case No. 3:22-CV-04962-RFL

1    shift during which Operators needed to remain attentive and available to Defendants. Plaintiffs believe

2    that the decisions in *Ward v. Tilly's, Inc.*, 31 Cal.App.5th 1167 (2019), and *Herrera v. Zumiez, Inc.*, 953

3    F.3d 1063 (2020), provided clear guidance regarding an employer's reporting time pay requirements

4    under California law and confirmed Defendants' failure to pay Operators for all hours worked.

5    Nonetheless, this is a novel issue in the law, and class certification has been denied in other, similar

6    cases, including *Ward.* Renick Decl. ¶ 24.

7            Plaintiffs also alleged claims for violations of Labor Code sections 203 and 226, the UCL, and

8    PAGA. The Settlement provides that $40,000 will be allocated to penalties under the PAGA, with 75%

9    of the PAGA penalties ($30,000) being paid to the California Labor and Workforce Development

10   Agency ("LWDA") and 25% of the PAGA penalties ($10,000) being paid to Settlement Class

11   Members, including members who opt out. Renick Decl. ¶ 35. This amount is reasonable and adequate

12   given that the possible recovery on the PAGA claim is within the Court's discretion and varies

13   tremendously from thousands to a few million dollars, and that there is "a substantial risk of recovering

14   nothing" or very little. *See, e.g., Viceral v. Mistras Group, Inc*. No. 15-cv-02198-EMC, 2017 WL

15   661352, at *3 (N.D. Cal. Feb. 17, 2017).

16           Moreover, a settlement is not judged *solely* against what might have been recovered had

17   Plaintiffs prevailed at trial, nor does the settlement have to provide 100% of the damages sought to be

18   fair and reasonable. *See Linney v. Cellular Alaska Partnership,* 151 F.3d 1234, 1242 (9th Cir. 1998); *In*

19   *re Mego Fin. Corp. Sec. Litig.,* 213 F. 3d 454, 459 (9th Cir. 2000). "Naturally, the agreement reached

20   normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties

21   each give up something they might have won had they proceeded with litigation." *Officers for Justice v.*

22   *Civil Serv. Comm'n*, 688 F.2d 615, 624 (9th Cir. 1982) (citation omitted). Indeed, "[i]t is well-settled

23   law that a cash settlement amounting to only a fraction of the potential recovery does not . . . render the

24   settlement inadequate or unfair." *Id.* at 628. Accordingly, the proposed Settlement is not to be judged

25   against a speculative measure of what might have been achieved. *Linney,* 151 F.3d at 1234.

26           The Settlement compares favorably with other cases recently resolved on behalf of 12-hour shift

27   operators at Northern California refineries. In *Craig v. Corteva*, U.S.D.C., Northern District, Case No.

28   3:19-cv-07923 (final approval of $3,800,000 settlement granted January 31, 2022), the average payment

11

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF SETTLEMENT;
MEMORANDUM OF POINTS IN SUPPORT THEREOF/Case No. 3:22-CV-04962-RFL

to 223 Class Members was $12,511.96; In *Buzas v. Phillips 66 Company*, U.S.D.C., Northern District, Case No. 4:17-cv-00163 (final approval of $5,500,000 settlement granted March 8, 2018), 677 class members received an average distribution of $5,881.20. In *Berlanga v. Equilon Enterprises LLC,* U.S.D.C., Northern District, Case No. 4:17-cv-00282 (final approval of $7,750,000 settlement granted January 22, 2019), 497 class members received an average distribution of $11,419. In *Clack v. Chevron Corporation*, Los Angeles Superior Court, Case No. BC649514 (final approval of $17,375,000 granted on August 6, 2020), 2,026 class members received an average distribution of $6,334.74. In *Kendig v. ExxonMobil Oil Corp.*, U.S.D.C., Central District, Case No. 2:18-cv-9224 (final approval of $4,391,585 settlement granted on August 24, 2020), 338 Class Members received an average distribution of $9,514.04. Renick Decl., ¶ 26.

### 1.    The Extent of Discovery and Stage of the Proceedings

This factor requires the Court to evaluate whether "the parties have sufficient information to make an informed decision about settlement." *Linney*, 151 F.3d at 1239. During the action's pendency, Class Counsel thoroughly investigated and researched the claims, potential defenses, and the developing body of law relating to the interpretation of the Wage Orders and an employer's duty to compensate employees for all time spent reporting to work. As described above, Class Counsel thoroughly engaged in the discovery process and made use of documents and data provided by Defendants through formal and informal discovery to assess Defendants' potential liability and the likelihood the Court could grant class certification. Thus, the Parties have enough information to make an informed appraisal of the case in reaching a Settlement, which strongly benefits the Class and favors approval. Renick Decl. ¶ 27.

### 2.    Experience and Views of Counsel

It is Class Counsel's recommendation and belief that the proposed settlement is in the best interests of the Settlement Class. Renick Decl. ¶ 28.

> Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation. This is because parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation.

*DirecTV*, 221 F.R.D. at 528 (internal quotations, alterations, and citations omitted).

This Settlement is the product of arms-length, non-collusive negotiations attended by

experienced class counsel. Renick Decl. ¶ 29. Prior to settlement, a complete investigation of Defendants' on-call and scheduling practices and an extensive review of schedules, timecard and payroll data were conducted to evaluate liability and damages. Renick Decl. ¶ 30. The litigation had reached the stage where the Parties have a clear view of the strengths and weaknesses of their cases sufficient to support the Settlement. *See Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979). Based on their evaluation and expertise, Class Counsel strongly believe that the settlement is a fair, reasonable, and adequate resolution of the claims of the Settlement Class and is preferable to continued litigation.[2] Renick Decl. ¶ 31.

### 3.    The Presence of Governmental Entities

There are no government entities participating in the Settlement. Plaintiffs, however, provided a copy of the Settlement Agreement to the California Labor and Workforce Development Agency ("LWDA") in accordance with Labor Code § 2699(l)(2) on March 11, 2024. As of the filing of this motion, the LWDA has not filed an objection or raised a concern regarding the Settlement. *Id.*

The absence of any objection or concern raised by a government entity provided notice weighs in favor of the Settlement.

### 4.    The Reaction of the Class Members

The reaction of the Class Members has been very positive and favors approval of the Settlement. Here, the Notice informed Settlement Class Members that Requests for Exclusion were to be sent to the Claims Administrator, such that they are postmarked on or before May 10, 2024, Dkt. 70; Ex. 1 to Nava Decl. at ¶¶ 6-7. The Notice also sets forth the information that must be included in each Request for Exclusion. *Id.* At ¶¶ 7-8. In addition, the Notice informed Settlement Class Members that Objections were to be filed or mailed to the Court, such that they are postmarked on or before July 9, 2024.  *Id.* At 8.

No Class Member has objected to or opted out of the Settlement. Nava Decl. at ¶ 10.

---

[2] Class Counsel "represents [the] interests of the class as a whole" and it is Class Counsel's responsibility to "determine whether seeking the court's approval of a settlement would be in the best interests of the class as a whole." Fed. R. Civ. P. 23, cmts. 2003 amdts., ¶ (B)(1).

**NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF SETTLEMENT; MEMORANDUM OF POINTS IN SUPPORT THEREOF/Case No. 3:22-CV-04962-RFL**

1

**E.** **The Plan of Allocation Is Fair, Adequate, and Reasonable and Should be Approved.**

"Approval of a plan for the allocation of a class settlement fund is governed by the same legal standards that are applicable to approval of the settlement: the distribution plan must be 'fair, reasonable, and adequate.'" *In re Citric Acid Antitrust Litig.,* 145 F. Supp. 2d 1152, 1154 (N.D. Cal. 2001). Here, the plan of allocation provides that court-approved attorneys' fees and costs, court-approved service awards, administrative costs, and payment to the LWDA under PAGA are deducted from the Settlement Fund ($3,800,000) to determine the "Net Settlement Amount." Renick Decl., Ex. 1, ¶ 28. The Net Settlement Amount is then allocated for each member of the Settlement Class. Renick Decl. at ¶¶ 2; 22.

*Attorneys' Fees*—With respect to awarding attorneys' fees, "courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *In re Bluetooth Headset Prods. Liab. Litig*., 654 F.3d 935, 941 (9th Cir. 2011). Plaintiffs filed their Motion for Attorneys' Fees and Reimbursement of Costs seeking fees in the amount of $950,000 (25% of the settlement) and $21,664.81 in costs, which was filed and posted to the case website on June 14, 2024. Renick Decl., ¶ 33; Nava Decl. ¶ 6.c. The motion reflects that the fees and costs requested by Plaintiffs are reasonable and justified based on the relevant factors weighed in determining such awards. *See* Dkt. 71. Moreover, the request is void of any evidence of collusion, such as counsel receiving a disproportionate distribution in comparison to the class, a negotiated "clear sailing agreement," or the reversion to Defendants of any unawarded fee amount. *See Bluetooth*, 654 F.3d at 947. Here, Plaintiffs seek fees at the Ninth Circuit's 25% of the fund benchmark, Defendants have only agreed not to oppose a reasonable fee request, and the entire settlement amount is non-reversionary. Ex. 1, ¶ 51. Plaintiffs' lodestar is $478,670.00, and Plaintiffs seek a multiplier of 1.98. This falls well within the Ninth Circuit's presumptively acceptable range of 1.0 to 4.0. *See Vizcaino v. Microsoft Corp*., 290 F.3d 1043, 1051 n.6 (9th Cir. 2002); *see also Dyer v. Wells Fargo Bank, N.A*., 303 F.R.D. 326, 334 (N.D. Cal. 2014) (applying 2.83 multiplier); *Craft v. City of San Bernardino*, 624 F. Supp. 2d 1113, 1125 (C.D. Cal. 2008) (court ordered attorneys' fee of 25% of the settlement fund, where lodestar cross-check showed a multiplier of 5.2).

*Incentive Awards*—As addressed herein, *see infra* Section III.D., Plaintiffs seek an incentive award in the amount of $15,000 for each of the two Named Plaintiffs. "The Ninth Circuit has recognized

14

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF SETTLEMENT;
MEMORANDUM OF POINTS IN SUPPORT THEREOF/Case No. 3:22-CV-04962-RFL

that service awards to named plaintiffs in a class action are permissible and do not render a settlement unfair or unreasonable." *Harris v. Vector Mktg. Corp.*, No. C-08-5198 EMC, 2011 U.S. Dist. LEXIS 48878, at \*28 (N.D. Cal. Apr. 29, 2011) (*citing Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003)). Here, the amount sought is reasonable and fair based on the services provided and risks incurred by each during the course of the class action litigation.

*Administrative Costs*—Plaintiffs also request final approval of administration costs to be paid to Claims Administrator APEX in the amount of $8,990. Nava Decl. ¶ 18, and Ex. 2 thereto. "Courts regularly award administrative costs associated with providing notice to the class." *Bellinghausen*, 306 F.R.D. at 266. The amount requested is fair and reasonable given that the Claims Administrator promptly and properly distributed the Class Notice to Class Members and has performed its duties in accordance with the Settlement terms.  Nava Decl. ¶¶ 4-15; Renick Decl. ¶ 34.

*PAGA penalties*—The Settlement provides that $40,000 will be allocated to penalties under the Private Attorneys General Act ("PAGA"), with 75% of the PAGA penalties ($30,000) being paid to the California Labor and Workforce Development Agency ("LWDA") and 25% of the PAGA penalties ($10,000) being paid to Settlement Class Members, including those who opt out. Renick Decl. ¶ 2. This amount is reasonable and adequate given that the possible recovery on the PAGA claim varies tremendously from thousands to a few million dollars, and that there is "a substantial risk of recovering nothing" or very little. *See, e.g., Viceral v. Mistras Group, Inc*. No. 15-cv-02198-EMC, 2017 WL 661352 (N.D. Cal. Feb. 17, 2017), at \*3. For instance, in *Viceral v. Mistras Group, Inc.*, the Court granted final approval of a $6,000,000 settlement with a $20,000 allocation for the PAGA claim because plaintiffs faced "a substantial risk of recovering nothing on either the PAGA or class claims."  *Id.* The court referred to its prior considerations at preliminary approval, which included that "courts have often exercised discretion to reduce PAGA verdicts below the statutory penalty." *Id.* at \*8. This Court should, therefore, approve the $40,000 allocation for the PAGA claim as adequate and reasonable, especially since the LWDA has filed no objection despite being served with notice of settlement on March 11, 2024.

*Class Member Payments*—The formula in the Settlement Agreement provides to each Class Member a cash payment which equates to a percentage of the Net Settlement Amount calculated based

upon the number of weeks worked by a participating Class Member during the Class Period while

assigned a 12-hour rotating shift at the Pittsburg, California manufacturing plant. The Administrator

calculated the total number of Workweeks worked by all Class Members during the Class Period. The

value of each Workweek equals the Net Settlement Amount divided by the total number of Workweeks

for all Class Members. Renick Decl. ¶ 40. "A plan of allocation that reimburses class members based on

the extent of their injuries is generally reasonable." *In re Oracle Sec. Litig.*, No. C-90-0931-VRW, 1994

U.S. Dist. LEXIS 21593, at *3 (N.D. Cal. June 18, 1994). The formula here is reasonable as it relies on a

"neutral and uniform metric by which to allocate the Settlement." *See In re High-Tech*, 2015 U.S. Dist.

LEXIS 118051, at *23-24 (finding plan of allocation appropriate where formula was based on each

Class Member's relative share of base salary, a "neutral and uniform metric").

Following the issuance of an order granting final approval of the settlement and plan of

allocation, the Claims Administrator will pay from the fund the court-ordered amounts and carry out the

distribution of the Net Settlement Amount by mailing individual checks to the Settlement Class

Members. Renick Decl., SA, Ex. 1, ¶¶ 100-102. If any checks remain uncashed, the Claims

Administrator will attempt to locate the Class Member, after which any uncashed checks should be sent

to the California State Controller's Office Unclaimed Property Fund. For all of the reasons set forth

herein and the accompanying declarations, the plan of allocation is fair, reasonable, and should be

approved.

### F.    The Requested Service Payment for the Two Named Plaintiffs Should Be Approved

On August 30, 2022, Plaintiffs Diego Guzman and Kevin Whitlatch, both came forward to

represent the interests of 12-hour shift employees their employer, Dow Agrosciences, LLC and the

Dow Chemical Company.  Because of Plaintiffs' commitment to prosecute the class action complaint

against their employer for its failure to compensate class members for on-call shifts at its Pittsburg

operation, 194 class members will significantly benefit from the $3,800,000 non-reversionary

settlement. Renick Decl. ¶ 36.

Each Plaintiff has provided relevant and unique information to Class Counsel regarding the day-

to-day practices and operations at their workplaces as well as facilitated communications with co-

workers/Class Members, all of which was essential for bringing and pursuing this litigation on a class-

wide basis. Renick Decl. ¶ 37.

Each Plaintiff spent considerable time pursuing the litigation, which included: gathering documents and providing them to Class Counsel; numerous meetings and calls with Class Counsel to discuss documents, the company practices and policies, and other facts relevant to the legal claims; reaching out to co-workers to gather information and documents; being available to Class Counsel to provide information and answer questions, including during the mediation. Guzman Decl., ¶¶ 5-8; Whitlach Decl., ¶¶ 5-7. Each Plaintiff took his responsibilities to the Class seriously, having spent numerous hours throughout the litigation maintaining contact with Class Counsel and keeping class members up to date regarding the status of the litigation. Guzman Decl., ¶¶ 5-8; Whitlach Decl., ¶¶ 5-7

The retaliation and reputational risk Plaintiffs have undertaken by agreeing to be representatives for the Class are real.  By associating their names with this litigation, each has put themselves at risk of retaliation with respect to their jobs while employed by Defendants and future job opportunities. Plaintiffs took on the reputation of employees who will file a lawsuit against their employer, which has the real potential of jeopardizing future employment, particularly with a connected pool of likely employers in the same industry.  Plaintiffs have experienced and will continue to endure the stress of knowing that their initiation and prosecution of this lawsuit on behalf of the Class, which has cost their employer millions, may negatively impact future employment opportunities. Guzman Decl., ¶¶ 5-8; Whitlach Decl., ¶¶ 5-7.

The Settlement Agreement authorizes a Service Payment of $15,000 each to the two Plaintiffs. "[T]he Ninth Circuit has recognized that service awards to plaintiffs in a class action are permissible and do not render a settlement unfair or unreasonable." *Harris,* 2011 U.S. Dist. LEXIS 48878, at *28 (citing *Staton v. Boeing Co.,* 327 F.3d 938, 977 (9th Cir. 2003)); *see also Resnick v. Frank*, 779 F.3d 934, 943 (9th Cir. 2015) ("Incentive payments to class representatives do not, by themselves, create an impermissible conflict between class members and their representatives.").  Courts routinely approve such service payments to compensate plaintiffs for the work done on behalf of the class, the risks they incurred during the course of the class action litigation, and sometimes, to recognize their willingness to act as a private attorney general. *Resnick,* 779 F.3d at 943.

17

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF SETTLEMENT;
MEMORANDUM OF POINTS IN SUPPORT THEREOF/Case No. 3:22-CV-04962-RFL

1   The purpose of service payments is to "compensate class representatives for work done on behalf

2   of the class, to make up for financial or reputational risk undertaking in bringing the action, and

3   sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez*, 563 F.3d at

4   958-59.

5   Subject to this Court's approval, Class Counsel requests the sum of $15,000 each to the two

6   Plaintiffs for their commitment to prosecuting this litigation, their efforts for more than two years, general

7   releases of all claims arising from their employment, stigma upon future employment opportunities for

8   having sued an employer, as well as having obtained substantial recoveries for every Class Member. *See*

9   Guzman Decl., ¶¶ 5-8; Whitlach Decl., ¶¶ 5-7

10   The Service Payments requested are well within the range of those approved throughout

11   California. *e.g., Boyd v. Bank of Am. Corp.,* No. SACV 13–561 DOC, 2014 WL 6473804, at *7 (C.D.

12   Cal. Nov. 18, 2014) (approving $15,000 for named plaintiff as part of $5.8 million settlement of wage

13   and hour misclassification class action); *La Fleur v. Med. Mgmt. Int'l, Inc.*, No. EDCV 13-00398-VAP,

14   2014 WL 2967475, at *8 (C.D. Cal. June 25, 2014) (approving enhancement award of $15,000 for each

15   of two named plaintiffs as part of $535,000 wage and hour class action settlement); *Glass v. UBS*

16   *Financial Services, Inc.*, No. C-06-4068 MMC, 2007 WL 221862, at *16 (N.D. Cal. Jan. 26, 2007)

17   (Chesney, J.) (approving $25,000 incentive award to each of four named plaintiffs in FLSA overtime

18   wage class action).

19   Courts have found that an incentive award in this range is warranted particularly when the class

20   representatives have, as here, demonstrated "a strong commitment to the class." *Garner v. State Farm*

21   *Mut. Auto. Ins. Co.*, No. CV 08 1365 CW EMC, 2010 WL 1687832, at *17 & n.8 (N.D. Cal. Apr. 22,

22   2010) (citing *Masters v. Wilhelmina Model Agency, Inc.,* 473 F.3d 423, 430 (2d Cir. 2007) (approving

23   incentive awards of $25,000 to named plaintiffs who were deposed); *Cook v. Niedert*, 142 F.3d 1004,

24   1016 (7th Cir. 1998) (affirming $25,000 incentive award); *In re Conn. Gen. Life Ins. Co.*, 1997 WL

25   910387, at *14 (C.D. Cal. Feb.13, 1997) (approving $25,000 incentive payments).

26   In assessing whether a service payment is reasonable, courts may balance "the number of named

27   plaintiffs receiving service payments, the proportion of the payments relative to the settlement amount,

28   and the size of each payment." *Staton v. Boeing, Co.*, 327 F.3d 938, 977 (9th Cir. 2003). Here, the

18

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF SETTLEMENT;
MEMORANDUM OF POINTS IN SUPPORT THEREOF/Case No. 3:22-CV-04962-RFL

aggregate Service Payment of $30,000 (two Plaintiffs at $15,000 each) constitutes approximately 0.78% percent of the gross settlement amount of $3,800,000.

Plaintiffs have invested much personal time and effort in the investigation - both before and after the action was commenced - and prosecution, and settlement of the case. The requested Service Payments are justified, fair and reasonable, particularly in light of the substantial Settlement Payments to be enjoyed by the Class averaging over $14,129.   Defendants do not oppose these payments and there is no opposition by any Class Member, which further supports their reasonableness.

**G.    Final Certification of the Class for Settlement Purposes Is Proper.**

The Court should reaffirm its finding at preliminary approval that certification of the class for settlement is proper under Rule 23. *See* Dkt. 65 at 2. A district court must give "'undiluted, even heightened, attention in the settlement context' to scrutinize proposed settlement classes." *In re Hyundai & Kia Fuel Econ. Litig.*, Nos. 15-56014, 15-56025, 15-56059, 15-56061, 15-56064, 15-56067, 2018 U.S. App. LEXIS 1626, at *36 (9th Cir. Jan. 23, 2018) (citation omitted). Here, the numerosity, commonality, typicality, and adequacy of representation prerequisites under Rule 23(a) are met, and common questions of law and fact predominate under Rule 23(b)(3).

**1.    The Settlement Class Satisfies the Rule 23(a) Requirements**

*Numerosity*—Based on the Claims Administrator's review of the data from Defendants, the Settlement Class includes 194 members. Nava Decl. ¶ 13.  The proposed class is, therefore, so large that joinder is not practicable and disposition of their claims as a class will benefit the parties and the Court. *See Slaven v. BP America, Inc.*, 190 F.R.D. 649, 654 (C.D. Cal. 2000) ("As a general matter, courts have found that numerosity is satisfied when class size exceeds 40 members. . . .").

*Commonality*—To show commonality, a plaintiff "must demonstrate that there are questions of fact and law that are common to the class." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981 (9th Cir. 2011) (citing Fed. R. Civ. P. 23(a)(2)).  Here, Plaintiffs assert that there are common questions of fact and law arising from the putative class members' employment, including whether Defendants assigned certain employees Primary Relief shifts without compensation in accordance with applicable California law because those employees were subject to the control of their employer during those assigned shifts.

*Typicality*—"The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). The claims alleged by the Named Plaintiffs arise out of the challenged practices and common course of conduct by Defendants and are based on the same legal theories as the claims of the putative class members; thus, they are typical of those claims which could be alleged by any member of the proposed class. Further, the relief sought by Named Plaintiffs is typical of the relief which would be sought by each member of the proposed class if they were to file separate actions.

*Adequacy of Representation*—To determine whether named plaintiffs will adequately represent a class, courts look to (a) whether the named plaintiffs and their counsel have any conflicts of interest with other class members, and (b) whether the named plaintiffs and their counsel will prosecute the action vigorously on behalf of the class. *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d at 462 (*citing Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)). Here, Named Plaintiffs are proper representatives of the proposed class because neither the Named Plaintiffs nor their counsel have any apparent conflicts of interest with the absent members of the Settlement Class and their claims arise out of the same set of facts as those of the Settlement Class. The Named Plaintiffs have been committed to the vigorous prosecution of this case and have reached a resolution they believe is in the best interests of the Settlement Class. Renick Decl. ¶ 38. Moreover, Plaintiffs' counsel, Hadsell Stormer Renick & Dai, and Gilbert & Sackman are highly experienced class counsel, having handled dozens of similar wage and hour class actions, as well as other types of class and complex litigation. Renick Decl., ¶ 39.

### 2.    The Settlement Class Meets the Requirements of Rule 23(b)

Pursuant to Rule 23(b)(3), class adjudication is proper if "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and [] a class action is superior to other available methods for the fair and efficient adjudication of the controversy." *Sandoval v. Roadlink United States Pac., Inc.*, No. EDCV 10-00973 VAP(DTBx), 2011 U.S. Dist. LEXIS 130378, at *2 (C.D. Cal. Oct. 9, 2011).

*Predominance of common issues*—"Common issues predominate over individual issues when the common issues represent a significant aspect of the case and they can be resolved for all members of

the class in a single adjudication." *Edwards v. The First Am. Corp.*, 798 F.3d 1172, 1182 (9th Cir. 2015).

Dow's standby shift policies required Plaintiffs and their coworkers to "report for work" for purposes of

the reporting-time pay provision of the applicable IWC Wage Order. The elements of a claim under the

Wage Order are: (1) the employee is required to report for work; (2) the employee does report; and (3)

the employee is not put to work. See 8 Cal. Code Regs. § 11010, subd. 5 *see also Ward v. Tilly's*, 31

Cal.App.5th 1167 (2019), "'report[ing] for work' within the meaning of the Wage Order is best

understood as presenting oneself as ordered." Id. at 1185 (emphasis in original). This issue is suitable for

class adjudication because it pertains to all members of the class. *See Bradley v. Networkers Int'l, LLC*,

211 Cal. App. 4th 1129, 1150 (2012) ("The lack of a meal/rest break policy and the uniform failure to

authorize such breaks are matters of common proof.").  Common issues, therefore, predominate over

any individual issues.

     *Superiority*—"The superiority inquiry under Rule 23(b)(3) requires determination of whether the

objectives of the particular class action procedure will be achieved in the particular case." *Hanlon*, 150

F.3d at 1023.  "This determination necessarily involves a comparative evaluation of alternative

mechanisms of dispute resolution." *Id.* at 1023.  Here, Plaintiffs assert that the prosecution of separate

actions by individual members of the proposed class would create a risk of inconsistent and/or varying

adjudications with respect to the individual members of the class, establishing incompatible standards of

conduct for Defendants, and resulting in the impairment of putative class members' rights and the

disposition of their interests through actions to which they are not parties.  The prosecution of separate

actions and individualized litigation would also increase the delay and expense to all parties and the

court system.  Finally, compared with other methods such as intervention or the consolidation of

individual actions, a class action is fairer and more efficient.

/ / /

/ / /

/ / /

IV.    **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court enter an order granting Plaintiffs' Motion for Final Approval of Settlement and enter Judgment.

DATED:  July 16, 2024                    Respectfully submitted,

HADSELL STORMER RENICK & DAI LLP

GILBERT & SACKMAN, A LAW CORPORATION

*/s/- Randy Renick*
Randy Renick
Attorneys for Plaintiffs and Conditionally Certified Class

**NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF SETTLEMENT; MEMORANDUM OF POINTS IN SUPPORT THEREOF/Case No. 3:22-CV-04962-RFL**